The **UNITED STATES**

v.

**Abelardo ROMERO, a/k/a Pepe.**

**No. 73-CR-492.**

United States District Court,
E. D. New York.

Sept. 25, 1973.

**1236**

Robert A. Morse, U. S. Atty., E.D.N.Y. by Kenneth J. Kaplan, Asst. U. S. Atty., for plaintiff.

C. John Prince, Jamaica, N. Y., for defendant.

## MEMORANDUM DECISION

COSTANTINO, District Judge.

This is a criminal prosecution charging defendant Abelardo Romero with receiving, concealing, and selling Seiko watches knowing them to have been imported illegally into the United States, violating 18 U.S.C. § 545 (count one); receiving the watches knowing them to have been removed unlawfully from a bonded warehouse, violating 18 U.S.C. § 549 (count two); and receiving the watches knowing them to have been unlawfully removed from foreign commerce, violating 18 U.S.C. § 659 (count three). Defendant waived a trial by jury, and the case was tried by the court on May 24 and May 25, 1973. Defendant

moved to suppress his written statement of September 29, 1971. After a preliminary hearing, decision was reserved. Upon the consent of all parties the hearing transcript was offered and accepted into evidence at the trial before the court. Post trial memoranda of law were filed by the United States and counsel for the defendant.

### The Facts

On or about May 4, 1971 a shipment of Seiko watches arrived at John F. Kennedy International Airport in New York City from Japan and were stored in a bonded warehouse of Lan Chile Airlines pending their through shipment to Chile. The watches were not manufactured for the American market and thus were not legally marked for importation. They were valued at approximately $19,000 and were stored in two cartons in the warehouse. After a delayed shipment only one carton was delivered to the consigneee in Chile and a claim was presented to and paid by the airline for the loss of the other carton. The defendant, Abelardo "Pepe" Romero, was one of two supervisors at the Lan Chile warehouse, responsible for bills of lading and the accounts of the warehouse. On May 7, 1971 Romero saw a telex message that the consignee had not received the second carton and made a notation on the telex that the watches had been shipped. A few weeks later Romero purchased several Seiko watches from another Lan Chile employee, Juan Sanchez. Over a period of time Romero received fifty to sixty watches from Sanchez, paying $18.00 for each watch while the watches sold for $40.00 in stores. He then sold watches to a number of people. The watches bought and sold by Romero were identical to those missing from the shipment.

On September 29, 1971, agents of the Bureau of Customs visited Romero at the offices of Lan Chile. They asked him to accompany them to the customs office and drove him there. The agents and Romero all testified that no arrest was made and defendant was free to go at

any time. Agent Rennish testified that he read defendant his rights as follows:

I started off, "Before we ask you any questions, it's my duty to advise you of your rights. You have the right to remain silent." I asked him if he understood this; he said "Yes." I went on and I said, "Anything you say can be used against you in court or other proceedings. Do you understand this?" And he said, "Yes." Then I asked him, "You have the right to consult an attorney before making any statements or answering any questions, and you may have him present with you during the questioning. Do you understand this?" He said, "Yes."

I said, "You may have an attorney appointed by the Commissioner or the Court to represent you if you cannot afford one or otherwise obtain one," and he indicated that he understood.

"If you decide to answer any questions now, with or without a lawyer, you still have a right to stop the questioning for the purpose of consulting a lawyer. Do you understand this?" He said "Yes."

I then said, "You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make statements without consulting a lawyer if you so desire. Do you understand this?" He said, "Yes."

Defendant testified that no warnings were given to him before questioning and that he could not remember whether a "rights" card in Spanish had been shown to him. However, the agents testified that the Spanish card was shown to him before questioning began—immediately after the English rights were read. On being questioned, he first denied selling any Seiko watches but then admitted buying watches from Sanchez and selling them to others. He admitted knowing that the watches were part of the missing shipment and he stated that he knew they were stolen because of their low price and their source. He was asked to write a statement to this effect, which he did. The statement reads as follows:

N.Y. 9/29/71

I Abelardo Romero bought from Mr. Juan Sanchez around 50 to 60 watches Seiko costing $18—each one of them. (I was buying by 3, 4, 2, etc., after I sold the ones I bought before).

I saw a telex saying that one box of the valuable was missing and from the airbill I knew they were watches, that Mr. Sanchez was selling to me later, and I knew then that they were stolen watches.

I have my rights read and explained to me and I understand this rights.

I made the statement freely without threat and without promises of award of immunity.

/s/ Abelardo Romero
9/29/71 4:25 P.M.

/s/ John L. Rennish
[customs agent]

*The Motion to Suppress*

The basis for defendant's motion to suppress is his testimony that no *Miranda* warnings were given to him prior to the questioning. This position cannot be sustained. First, Agent Rennish testified that he read defendant his rights in English and showed defendant a "rights card" written in Spanish. The agent's testimony is bolstered by the signed written statement itself which defendant acknowledged at trial as his own. Defendant asserts that he was confused about the purpose of the questioning and believed that the agents were investigating Sanchez only. However, the warnings given defendant clearly stated that any statement made could be used against him. Further, there is no question that the defendant understands English and was capable of comprehending the import of the warnings. He attended Queensborough College, passed the New York State drivers examination, worked as a supervisor at Lan Chile Airlines handling complex docu-

**1238**

ments written in English and wrote his statement concerning the watches in English.

■ In view of the clear and convincing evidence introduced by the prosecution, the court finds, despite defendant's assertions to the contrary, that the written statement was preceded by the required *Miranda* warnings and was freely and intelligently given. The motion to suppress the statement is therefore denied.

### The Charges

■ As to count one, it is undisputed that defendant received and sold the watches, knowing them to have been imported illegally into the United States. He admitted all the elements of this charge. In addition there is corroborating evidence. Several of his customers testified that defendant sold watches to them. The watches were not marked for importation and so were clearly imported illegally—a fact which defendant was in a position to know because of his job at the airport. The defendant is guilty beyond a reasonable doubt of count one.

Count two, that defendant received watches knowing them to have been illegally removed from a bonded warehouse, has been established by proof beyond a reasonable doubt. In addition to defendant's statement that he knew the watches came from the missing shipment there is evidence that the watches were in a bonded warehouse. Defendant admitted knowing that the watches were "unlawfully removed." Defendant is therefore guilty of count two.

The third count, that defendant knowingly possessed goods stolen from foreign commerce was established by proof of the shipment's path—from Japan, through New York, to Chile—and his admission that he knew the watches came from the missing shipment. The telex message upon which Romero wrote is also in evidence. It is further corroboration of defendant's knowledge of the illegal source of Sanchez' watches.

Count three has been proven beyond a reasonable doubt.

Each element of the indictment has been proven beyond a reasonable doubt and the court accordingly finds defendant guilty of counts one, two and three.

The foregoing opinion constitutes the court's findings of fact and conclusions of law, in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.